# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

GARY CHAVEZ,

       **Plaintiff,**

vs.                                                 No. 01cv0254 MCA/JHG

**JOANNE B. BARNHART,**[1]
**COMMISSIONER OF SOCIAL SECURITY,**

       **Defendant.**

## MAGISTRATE JUDGE'S PROPOSED FINDINGS AND RECOMMENDED DISPOSITION

This matter is before the Court on Plaintiff's (Chavez') Motion to Reverse and Remand for Payment of Benefits, or in the Alternative, to Remand for a Rehearing, filed October 22, 2001. The Commissioner of Social Security issued a final decision denying Chavez' application for Supplemental Security Income benefits. Having considered the arguments, pleadings, administrative record, relevant law, and being otherwise fully informed, the Court finds the motion to reverse is not well taken and recommends that it be DENIED.

Chavez, now fifty-four years old, filed his application for benefits on April 14, 1998, alleging disability since January1, 1995, due to depression, chronic low back pain, alcoholism, and past history of injuries to his head and legs. He has a high school education and no past relevant work. The Commissioner denied Chavez' application for supplemental security income benefits both initially and on reconsideration. On September 16, 1999, the Commissioner's Administrative

---

[1] On November 9, 2001, JoAnne B. Barnhart was sworn in as Commissioner of the Social Security Administration. Thus, she is substituted as Defendant in this action.

Law Judge (ALJ) denied benefits, finding Chavez had severe impairments consisting of mild depression, alcoholism, and chronic low back pain. Tr. 12. However, the ALJ found Chavez did not have any disorder or combination of disorders meeting or equaling in severity any of the disorders described in the Listing of Impairments, Subpart P, Appendix 1. As to Chavez' credibility, the ALJ opined Chavez exaggerated the symptoms and functional limitations caused by his medical problems. Tr. 13. The ALJ then found Chavez had a residual functional capacity (RFC) "for at least light work [2] limited by a (sic) ability to understand, remember and carry out detailed instructions and a reduced ability to maintain attention and concentration for extended periods." *Id.* Chavez filed a Request for Review of the decision by the Appeals Council and submitted additional evidence. On January 5, 2001, the Appeals Council denied Chavez' request for review of the ALJ's decision. Hence, the decision of the ALJ became the final decision of the Commissioner for judicial review purposes. Chavez seeks judicial review of the Commissioner's final decision pursuant to 42 U.S.C. § 405(g).

The standard of review in this Social Security appeal is whether the Commissioner's final decision is supported by substantial evidence and whether he applied correct legal standards. *Hamilton v. Secretary of Health and Human Services,* 961 F.2d 1495, 1497-98 (10th Cir. 1992). Substantial evidence is more than a mere scintilla and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Glass v. Shalala*, 43 F.3d 1392, 1395

---

[2] Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, [claimant] must have the ability to do substantially all of these activities. 20 C.F.R. § 404.1567(b).

(10th Cir. 1994).

In order to qualify for disability insurance benefits or supplemental security income, a claimant must establish a severe physical or mental impairment expected to result in death or last for a continuous period of twelve months which prevents the claimant from engaging in substantial gainful activity. *Thompson v. Sullivan*, 987 F.2d 1482, 1486 (10th Cir. 1993)(citing 42 U.S.C. §423(d)(1)(A)). The regulations of the Social Security Administration require the Commissioner to evaluate five factors in a specific sequence in analyzing disability applications. 20 C.F.R. § 404.1520 (a-f). The sequential evaluation process ends if, at any step, the Commissioner finds the claimant is not disabled. *Thompson v. Sullivan*, 987 F.2d at 1487.

At the first four levels of the sequential evaluation process, the claimant must show he is not engaged in substantial gainful employment, he has an impairment or combination of impairments severe enough to limit his ability to do basic work activities, and his impairment meets or equals one of the presumptively disabling impairments listed in the regulations under 20 C.F.R. Part 404, Subpt. P, App. 1, or he is unable to perform work he had done in the past. 20 C.F.R. §§ 404.1520 and 416.920. At the fifth step of the evaluation, the burden of proof shifts to the Commissioner to show the claimant is able to perform other substantial gainful activity considering his residual functional capacity, age, education, and prior work experience. *Id.*

In support of his motion to reverse, Chavez makes the following arguments: (1) the ALJ erred in finding he had the RFC for at least light work; and (2) the ALJ erred in not including all of his impairments in the hypothetical to the vocational expert (VE).

Chavez contends the ALJ's erred in his RFC finding. Specifically, the ALJ found Chavez "had a residual functional capacity for at least light work limited by a (sic) inability to understand,

remember and carry out detailed instructions and a reduced ability to maintain attention and concentration for extended periods." Tr. 13. The ALJ took this limitation from Dr. Gabaldon's June 29, 1998 Mental RFC assessment. Tr. 89-92. Dr. Gabaldon is a psychologist and an agency consultant. Chavez contends this was error because "the RFC finding and the hypothetical to the VE both assume light work, but the nonexertional limitations are totally different." Pl.'s Mem. in Supp. of Mot. to Reverse at 4.

Chavez further argues the ALJ failed to include all of the limitations found in Dr. Gabaldon's June 29, 1998 Mental RFC assessment and thus chose evidence to support a certain decision. *Id.* Dr. Gabaldon's Mental RFC assessment also included the following: (1) a moderate limitation in the ability to sustain an ordinary routine without special supervision; (2) a moderate limitation in the ability to get along with coworkers or peers without distracting them or exhibiting behavioral extremes; and (3) a moderate limitation in the ability to be aware of normal hazards and take appropriate precautions. Tr 89-90. However, Dr. Gabaldon ultimately opined that "[t]he evidence suggests that this man should be able to do work that does not require much instruction." Tr. 91.

Additionally, on June 29, 1998, Dr. Gabaldon also performed a Psychiatric Review Technique (PRT) form. In the PRT form, Dr. Gabaldon indicated the record contained evidence of an anxiety-related disorder, a personality disorder, and a substance addiction disorder. Tr. 93-99. Dr. Gabaldon opined Chavez would suffer slight restriction of activities of daily living and slight difficulties in maintaining social functioning. Tr. 100. Finally, Dr. Gabaldon opined Chavez would often fail to complete tasks in a timely manner due to deficiencies of concentration, persistence or pace. *Id.*

On March 4, 1998, Dr. Balcazar, a psychiatrist, evaluated Chavez and opined Chavez had "adequate judgment to plan a work sequence from a psychiatric standpoint, he could use tools and materials for simple jobs, and he could perform on-or two-step repetitive tasks at a competitive rate." Tr. 81.

At the administrative hearing, Chavez testified he had a high school education (Tr. 173), could read and write English (Tr. 174), understood basic arithmetic (Tr. 174), had worked 8-12 hour days when he worked at the state fair for a period of three weeks (Tr. 176-77), took Tylenol to relieve his pain (Tr. 178), took "the wonder pills"amitriptyline for sleep and depression (Tr. 182), took aspirin for his headaches with significant relief (Tr. 185), amitriptyline made his headaches go away completely (Tr. 185), could work even with headaches (Tr. 187), could stand for 4 to 6 hours (Tr. 192), the amitriptyline controlled his anger and had a calming affect on him (Tr. 199), and Tylenol relieved his back pain (Tr. 201).

In his first hypothetical to the VE, the ALJ included the following: (1) fifty-one year old man; (2) twelve years of schooling; (3) needs glasses to read; (4) is able to read both Spanish and English; (5) has worked as a parking attendant for eight years during the state fair, for about 3 weeks each year; (6) when he works as a parking attendant he works eight to twelve hours a day; (7) the parking attendant job requires standing and walking; (8) he was in an automobile accident in 1969 in which he suffered injuries to the back, head, and fractured his legs; (9) he still suffers pain from the 1969 injuries; (10) he may be suffering from arthritic pain for which he takes Tylenol; (11) he takes amitriptyline which helps him sleep, relaxes him, decreases his anger; (12) he has an alcohol problem but that is under control with AA meetings; (13) he claims to suffer from paranoia but has not been evaluated and the evidence does not support it; it is more a

5

problem with being around people and depression; (14) he communicates mostly with his brothers; not very sociable; (15) he receives no therapy for his depression but is treated with amitriptyline; (15) he testified he can sit for six hours out of an eight hour day; (16) he can stand and walk around for a long time; and (17) one physician indicated he could occasionally lift 50 pounds, frequently 25 pounds. Tr. 220-24.

To this hypothetical the VE testified Chavez could perform the following jobs: (1) laundry folder, laundry spotter; light, unskilled job; 40,500 jobs in the national economy, 1,000 jobs in New Mexico; (2) advertising material distributor; light, unskilled job; 260,000 jobs in the national economy, 600 jobs in New Mexico; (4) surveillance system monitor; sedentary, unskilled job; 803,000 jobs in the national economy, 2,100 jobs in New Mexico; and (4) a jewelry sorter, jewelry preparer; sedentary, unskilled job; 803,000 jobs in the national economy, 166 jobs in New Mexico.

Chavez' counsel then posed the following additional limitations to the VE: (1) **mild** limitation in the ability to maintain attention and concentration for extended periods; (2) **moderate** limitation in the ability to get along with co-workers or peers without distracting them or exhibiting behavioral extremes; (3) **moderate** limitation in the ability to be aware of normal hazards and take appropriate precaution; and (4) **moderate** limitation in the ability to sustain an ordinary routine without special supervision. Tr. 225. Counsel took these limitations from Dr. Gabaldon's June 29, 1998 Mental RFC assessment. Tr. 89-92.

Considering these additional limitations, the VE opined as follows: (1) the mild limitation in the ability to maintain attention and concentration for extended period would eliminate the surveillance system monitor; and (2) the rest of the limitations would reduce the remaining jobs by

half. Tr. 225-26. Counsel then questioned the VE regarding the moderate limitation in the ability to sustain an ordinary routine without special supervision.

> Counsel: And so the last limitation, the moderate impairment in the ability to sustain an ordinary routine without special supervision?
>
> VE: Yeah, I include all those in the past production that I made, but that was moderate.
>
> Counsel: All 4 of these jobs have an ordinary routine to them?
>
> VE: Yes. I would say the jewelry preparer a that one I, I, I probably would reduce by 3/4 the jewelry preparer because as a sorter because that's kind of a assembly type job, production type job. So, he would have to keep up a fairly regular routine.
>
> Counsel: What's likely to happen over a period of time with employee that needs a special supervision?
>
> VE: Why?
>
> Counsel: How, how would most employers relate to that employer (sic) with a moderate limitation in, in needing special supervision?
>
> VE: Well, usually the special supervision would come during the training period, so I'd say 30 days, but if they need constant supervision–
>
> Counsel: Yes, throughout the, the job history.
>
> VE: – it would be more of a, a I don't think they wouldn't be able to maintain employment, sounds more like a shelter workshop setting to me.

Based on this testimony, Chavez contends the VE testified he "wouldn't be able to maintain

7

employment." Pl.'s Mem. in Supp. of Mot. to Reverse at 6. Accordingly, Chavez argues that "the testimony of the VE was that when all of [his] impairments, both exertional and nonexertional, are considered, there is no job that [he] could perform, and reversal for payment of benefits to [him] is appropriate." *Id.* The Court disagrees. Hypothetical questions need not take into account all of claimant's alleged impairments. Questions to a VE are proper when they take into account the impairments substantiated by the medical reports and the impairments accepted as true by the ALJ. *See Gay v. Sullivan,* 986 F.2d 1336, 1340-41 (10th Cir. 1993); *Talley v. Sullivan*, 908 F.2d 585, 588 (10th Cir. 1990). The VE was present throughout the administrative hearing, the ALJ reiterated Chavez' limitations, counsel pointed out limitations he wanted considered and the VE then testified there were jobs Chavez could perform. Tr. 225-26. It was not until counsel construed Chavez' fourth limitation as requiring "**constant supervision throughout the job history"** that the VE opined that Chavez "wouldn't be able to maintain employment." Tr. 227. The ALJ did not accept counsel's understanding of Chavez' fourth limitation and the evidence does not support it. After carefully reviewing the record, the Court finds that substantial evidence supports the ALJ's RFC finding.

Finally, Chavez contends the ALJ should have held a supplemental hearing to consider Dr. Mary Fredrick's Mental RFC assessment which she completed on August 27, 1999, two days after the administrative hearing. Dr. Fredrick found Chavez had moderate limitations in all but two areas. Tr. 156-57. Although, Dr. Fredrick is not a specialist, she is considered to be a treating physician. A treating physician may offer an opinion about a claimant's condition and about the nature and severity of any impairments. *Castellano v. Secretary of Health and Human Servs.*, 26 F.3d 1027, 1029 (10th Cir. 1994). The regulations provide that the agency generally

8

will give more weight to medical opinions from treating sources than those from non-treating sources and that the agency will give controlling weight to the medical opinion of a treating source if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence." 20 C.F.R. § 404.1527(d)(2).

According to the record, Dr. Fredrick was one of the health care provider that treated Chavez at First Choice Community Healthcare. Tr. 76. The medical records from First Choice (Tr. 113-148) do not support Dr. Fredrick's Mental RFC assessment. Accordingly, the ALJ did not err in not holding a supplemental hearing.

## RECOMMENDED DISPOSITION

The ALJ applied correct legal standards and his decision is supported by substantial evidence. Chavez' Motion to Reverse and Remand for Payment of Benefits, or in the Alternative, to Remand for a Rehearing, filed October 22, 2001, should be denied, and this case dismissed.

_____
**JOE H. GALVAN**
**UNITED STATES MAGISTRATE JUDGE**

**NOTICE**

Within ten days after a party is served with a copy of these proposed findings and recommended disposition that party may, pursuant to 28 U.S.C. § 636 (b)(1), file written objections to such proposed findings and recommended disposition. A party must file any objections within the ten day period allowed if that party wants to have appellate review of the proposed findings and recommended disposition. If no objections are filed, no appellate review will be allowed.